**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

AMERICAN CAR RENTAL
ASSOCIATION, a District of Columbia
corporation,

      Plaintiff - Appellant,

v.

HEIDI HUMPHREYS, in her official
capacity as Executive Director of the
Colorado Department of Revenue;
SHOSHANA LEW, in her official capacity
as the Executive Director of the Colorado
Department of Transportation; CECIL
GUTIERREZ, in his official capacity as the
Chair of the Colorado High-Performance
Transportation Enterprise,

      Defendants - Appellees.

------------------------------

WASHINGTON LEGAL FOUNDATION,

      Amicus Curiae.

No. 25-1246

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:24-CV-02450-DDD-KAS)**
_____

Daniel H. Schlueter (Jeffrey A. Friedman, with him on the briefs), Eversheds Sutherland
(US) LLP, Washington, DC, appearing for Appellants.

Pawan Nelson, Senior Assistant Attorney General (Philip J. Weiser, Attorney General, and Shelby A. Krantz, Assistant Attorney General, with her on the brief), Office of the Attorney General for the State of Colorado, Denver, Colorado, appearing for the Appellees.

Cory L. Andrews, Washington Legal Foundation, Washington, DC, filed an amicus curiae brief in support of Appellant.

_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

In 2024, the Colorado General Assembly enacted a law imposing a "congestion impact fee" of up to $3 per day on all short-term vehicle rentals ("the Fee"). Colo. Rev. Stat. § 43-4-806(7.6)(a)(i). Plaintiff American Car Rental Association ("ACRA") sued under 42 U.S.C. § 1983, claiming the federal Anti-Head Tax Act ("AHTA") preempts the Fee.

The relevant AHTA provision forbids a State to "levy or collect a tax, fee, or charge . . . upon any business located at a commercial service airport . . . that is not generally imposed on sales or services by that State." 49 U.S.C. § 40116(d)(2)(A)(v) ("Subsection (v)").

In district court, the parties focused on the phrase "not generally imposed on sales or services." ACRA argued that AHTA bars the Fee because it applies only to car rentals and not all "sales and services." The State defendants argued the Fee complies with AHTA's "generally imposed on sales or services" because it applies

2

both to airport and non-airport car rentals.  The district court agreed with the State defendants and granted their summary judgment motion.

We affirm for a different reason, which the parties addressed in supplemental briefs.  Colorado imposes the Fee on consumers.  The AHTA prohibits a fee "upon any business located at a commercial service airport."  It therefore does not apply to the Fee and does not preempt the Colorado law.

## I.    BACKGROUND

### A.  *The Anti-Head Tax Act*

The AHTA traces its origins to *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707 (1972).  There, the Supreme Court addressed "whether a charge by a State or municipality of $1 per commercial airline passenger to help defray the costs of airport construction and maintenance violates the Federal Constitution."  *Id.* at 709.  The Court said no, holding "that the Commerce Clause does not prohibit States or municipalities from charging commercial airlines a 'head tax' on passengers boarding flights at airports within the jurisdiction, to defray the costs of airport construction and maintenance." *Nw. Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355, 362 (1994) (citing *Evansville*, 405 U.S. at 707).

Shortly after *Evansville*, "Committees in both Houses of Congress held hearings on local taxation of air transportation."  *Aloha Airlines, Inc. v. Dir. of Tax'n of Haw.*, 464 U.S. 7, 9 (1983).  "Both Committees concluded that the proliferation of

local taxes burdened interstate air transportation." *Id.* To address this problem, Congress enacted the Airport and Airway Development Acceleration Act of 1973 ("AADA"). *Id.* at 9-10. The AADA included 49 U.S.C. § 1513, which is commonly referred to as the AHTA and prohibited taxes on air passengers and air commerce. *Id.* at 10.

In 1994, Congress reenacted the AHTA, expanding federal restrictions beyond air travel to businesses located at commercial service airports and businesses operating as permittees of such airports. *See* 49 U.S.C. § 40116(a)(d)(2)(A)(iv). This new provision prohibited states and their political subdivisions from levying or collecting taxes, fees, or charges "exclusively upon any" of these businesses. *Id.*

State and local governments began circumventing the AHTA by imposing taxes and fees that targeted airport-based businesses, including rental car businesses. *See generally* 164 Cong. Rec. H3590-05, H3597 (daily ed. Apr. 26, 2018) (statement of Rep. Graves) (noting "local and State governments [were] targeting certain industries for discriminatory taxes, like the rental car industry"). Congress became concerned that these taxes and fees had the same effect as the head taxes that the AHTA expressly prohibited.

In 2018, Congress enacted Section 159 of the FAA Reauthorization Act of 2018, Pub. L. No. 115-254, 132 Stat. 3186, adding Subsection (v) to the AHTA to prohibit these types of taxes and fees. *See* 49 U.S.C. § 40116(d)(2)(A)(v) (2019).

As currently codified, § 40116(d)(2)(A)(v) provides:

4

(d) **Unreasonable burdens and discrimination against interstate commerce**.

\* \* \*

(2)(A) A State, political subdivision of a State, or authority acting for a State or political subdivision may not do any of the following acts because those acts unreasonably burden and discriminate against interstate commerce:

\* \* \*

(v) except as otherwise provided under section 47133 [which addresses local taxes on aviation fuel], levy or collect a tax, fee, or charge, first taking effect after the date of enactment of this clause [i.e., October 5, 2018], upon any business located at a commercial service airport or operating as a permittee of such an airport that is not generally imposed on sales or services by that State, political subdivision, or authority unless wholly utilized for airport or aeronautical purposes.

49 U.S.C. § 40116(d)(2)(A)(v).

## B. *Colorado's Congestion Impact Fee*

On May 16, 2024, the Colorado General Assembly enacted, and the Governor signed into law, S.B. 24-184.  In SB 24-184, the General Assembly found:

All rental cars, regardless of where they are rented, use public highways and have a large impact on our public highway systems, adding congestion, wear and tear, and more greenhouse gas (GHG) emissions. Additional cars on our roads from out-of-state visitors, in-state leisure travel, heavy trucks, and vans for moving services have a documented impact, and investments in offsets such as transit and rail services benefit the drivers of those rental vehicles by reducing the amount of traffic congestion that they encounter throughout the state. A generally applicable fee on short-term vehicle rentals would equitably support investment in such offsets to reduce congestion on the public highway system.

S.B. 24-184, Section 1(d), 74th Gen. Assemb., 2d Reg. Sess. (Colo. 2024).

SB 24-184 directed that Colorado Revised Statute § 43-4-806 be amended to add

5

subsection (7.6), which reads, "on and after January 1, 2025," the Colorado High Performance Transportation Enterprise ("CTE")[1] "shall impose a congestion impact fee on all short-term vehicle rentals at a maximum rate" of up to $3 per day (to be subsequently adjusted for inflation). Colo. S.B. 24-184, Section 13; *see also* Colo. Rev. Stat. § 43-4-806(7.6)(a)(I).

The statute defines a "Short-term vehicle rental" as any motor vehicle "with a gross vehicle weight rating of twenty-six thousand pounds or less that is rented within Colorado for a period of not more than thirty days." Colo. Rev. Stat. § 43-4-806(7.6)(a)(II)(D). It "includes rentals of passenger vehicles as well as heavy motor vehicles like U-Haul trucks." App., Vol. I at 226 (citing Colo. S.B. 24-184, Section 1(j)). As the State defendants explain, the Fee "applies to all short-term vehicle rentals throughout the State, regardless of where the vehicle is rented." *Id.*; *see* Colo. Rev. Stat. § 43-4-806(7.6)(a)(I) ("the transportation enterprise shall impose a congestion impact fee on *all* short-term vehicle rentals" (emphasis added)).

C. *Procedural Background*

ACRA is a non-profit corporation. App., Vol. I at 7. "ACRA's members include car rental businesses that operate in Colorado" and other jurisdictions. *Id.*

---

[1] CTE is a government-owned business within the Colorado Department of Transportation.

ACRA sued defendants Heidi Humphreys, the Executive Director of the Colorado Department of Revenue; Shoshana Lew, the Executive Director of the Colorado Department of Transportation; and Cecil Gutierrez, the Chair of CTE (collectively, "State defendants").  The complaint alleged that the Fee "facially violates" Subsection (v) of the AHTA and the FAA Reauthorization Act.  *Id.*  Count One sought a declaratory judgment that "[t]he Fee is preempted by" Subsection (v) and is thus "invalid . . . and that it violates rights secured under the AHTA and the FAA Reauthorization Act."  *Id.* at 11.  Count Two sought a permanent injunction preventing defendants from "enforcing [the] illegal Fee."  *Id.* at 12.

The parties filed opposing summary judgment motions.  The district court denied ACRA's motion and granted the State defendants' motion.  The court held that Subsection (v) does not preempt the Fee.

## II.  DISCUSSION

On appeal, ACRA argues the district court erred in concluding that Subsection (v) does not preempt the Fee.  We disagree and affirm.

### A.  *Standard of Review*

"We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the non[-]moving party." *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1202 (10th Cir. 2026) (quotations omitted).  "We affirm summary judgment if there is no genuine dispute as

7

to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quotations omitted), *see* Fed. R. Civ. P. 56(a).

"The interpretation of a federal statute is a question of law which this court reviews de novo." *United States v. Dep't of Health & Env't*, 162 F.4th 1238, 1244 (10th Cir. 2025). Likewise, we review de novo the interpretation of a state statute. *Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1104 (10th Cir. 1996).

## B. *Federal Preemption*

Under the Constitution's Supremacy Clause, U.S. Const. art. VI, cl. 2, the Supreme Court has "long recognized that state laws that conflict with federal law are without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quotations omitted). "Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). Express preemption occurs when Congress has employed "explicit pre-emptive language" in a statute. *Id.*; *see US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010).[2]

As the parties agree, Subsection (v) contains "explicit pre-emptive language." *Gade*, 505 U.S. at 98; *see Altria*, 555 U.S. at 76 (noting that "Congress may indicate

---

[2] ACRA argues express preemption and has not made a "structure and purpose" challenge to the Fee.

pre-emptive intent through a statute's express language"). We must determine whether the Fee falls within Subsection (v)'s scope. We "focus on the plain wording" of the statute, "which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quotations omitted).

### C. *Subsection (v) and the Fee*

Subsection (v) provides that "[a] State . . . may not . . . *levy or collect a tax, fee, or charge . . . upon any business located at a commercial service airport* or operating as a permittee of such an airport." 49 U.S.C. § 40116(d)(2)(A)(v) (emphasis added). There is no dispute that the statutory term "fee" in Subsection (v) encompasses the Fee, and because Subsection (v) plainly limits its prohibition to "any business," the threshold question is whether the State of Colorado "lev[ies] or collect[s]" the Fee "upon any business located at a commercial airport." We conclude it does not.

### 1. **The Parties' Arguments**

ACRA argues "the Fee is 'imposed' on the rental transactions" and that "[b]usinesses making the rentals are liable for the Fee and are required to file returns and make corresponding payment of the Fee to the Colorado Department of Revenue on a monthly basis." Aplt. Supp. Br. at 1. "Consequently, the Fee is 'levied' or 'collected' on rental businesses located at the airport . . . ." *Id.*

9

The State defendants counter that "the Fee is imposed on consumers who rent short-term vehicles in Colorado." Aplee. Supp. Br. at 1. They argue that rental car businesses, including those located at airports, "collect the Fee from consumers and submit it to the [Colorado] Department [of Revenue] in the same manner as" sales taxes and "Colorado's daily vehicle rental fee." *Id.* at 3-4.[3]

## 2. The Colorado Statute

To resolve these arguments, we turn to the text of the Colorado statute that created the Fee. *See Sac & Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 578 (10th Cir. 2000) (in determining "upon whom the legal incidence of a tax rests," a court first looks to see if the statutory language is "dispositive"; if not, "the question is one of fair interpretation of the taxing statute as written and applied" (quotations omitted)). It provides that the CTE "shall impose [the Fee] on all short-term vehicle rentals at a maximum rate . . . that is reasonably calculated to generate only the amount of revenue needed *to pay the overall costs of providing the services to fee payers that*

---

[3] Colorado law imposes a "daily vehicle rental fee . . . on all short-term vehicle rentals at the rate of two dollars per day" and requires "[t]he rental invoice" to "list the daily vehicle rental fee separately as a Colorado road safety program fee." Colo. Rev. Stat. § 43-4-804(1)(b)(I)(A). The law further provides that "[t]he state treasurer shall credit the daily vehicle rental fees . . . to the highway users tax fund." Colo. Rev. Stat. § 43-4-804(1)(b)(II). "All moneys in the highway users tax fund are appropriated for the acquisition of rights-of-way for, and the construction, engineering, safety, reconstruction, improvement, repair, maintenance, and administration of" state and county highways, "city street systems, and other public roads and highways" in the state. Colo. Rev. Stat. § 43-4-204.

*will be funded with that revenue.*" Colo. Rev. Stat. § 43-4-806(7.6)(a)(I) (emphasis added). The statute does not define "fee payers." But the italicized language plainly indicates that "fee payers" are those persons or entities benefitting from the services funded by Fee revenue.

Although subsection (7.6)(a)(I) does not identify what those "services" are, other subsections do. Subsection (7.6)(b) provides that collected Fees shall be credited by the Colorado state treasurer to the State's "transportation special fund." Colo. Rev. Stat. § 43-4-806(7.6)(b). Subsection (3)(d) provides that the CTE "may expend moneys in the transportation special fund to pay [revenue] bond obligations, to fund surface transportation infrastructure projects, and for the acquisition of land to the extent required in connection with any surface transportation infrastructure project." Colo. Rev. Stat. § 43-4-806(3)(d). And subsections (1)(a) and (1.5)(a)(I) provide that "surface transportation infrastructure projects" are intended, in part, to "provide diverse, multimodal transportation options that reduce traffic congestion and degradation of existing surface transportation infrastructure," "offer more transportation choices for system users," and "reduce wear and tear on and increase the reliability, safety, and expected useful life of state highways and bridges." Colo. Rev. Stat. §§ 43-4-806(1)(a), (1.5)(a)(I).

These provisions align with the Colorado General Assembly's findings that led to the enactment of the statute—that investment in "offsets such as transit and rail services" would "benefit the drivers of . . . rental vehicles by reducing the amount of

11

traffic congestion they encounter throughout the state." Colo. S.B. 24-184, Section 1(d).

We conclude that the phrase "fee payers" in subsection (7.6)(a)(I) refers to the persons who rent vehicles, and not car rental businesses.[4] Those persons, not car rental businesses, will benefit from the "services" provided by the "surface transportation infrastructure projects" funded by the Fee.

The last sentence of subsection (7.6)(a)(I) lends further support. It provides that "[a] car sharing program shall collect the congestion impact fee for any short-term vehicle rental of twenty-four hours or longer that is enabled by the car sharing program." Colo. Rev. Stat. § 43-4-806(7.6)(a)(I). The statute defines "car sharing program" to mean "a person that is in the business of operating an online platform to connect third-party vehicle owners with third-party vehicle drivers to enable peer-to-peer car sharing within Colorado." Colo. Rev. Stat. §§ 6-1-1202(4)(a), 43-4-806(7.6)(a)(II)(B). Car sharing programs do not rent

---

[4] The dissent argues that "[b]y focusing on the phrase 'fee payers' in Colo. Rev. Stat. § 43-4-806(7.6)(a)(I)" we "overlook[] the broader statutory framework supporting the Congestion Impact Fee." Dissent at 3. But that is not so. As we more fully discuss, in addition to Colo. Rev. Stat. 43-4-806(7.6)(a)(I), we draw from five surrounding provisions to support our interpretation—Colo. Rev. Stat. §§ 43-4-806(7.6)(b), 806(3)(d), 806(1)(a), 806(1.5)(a)(I)—and from the Colorado General Assembly's findings, S.B. 24-184.

The dissent also states the Fee "operates upon airport businesses." Dissent at 3. But as noted above, the Fee applies throughout the state to "all short-term vehicle rentals," including car sharing programs. Colo. Rev. Stat. § 43-4-806(7.6)(a)(I).

vehicles to consumers.  By directing them to collect the Fee for any short-term

vehicle rentals they facilitate, subsection (7.6)(a)(I) undercuts ACRA's assertion that

Colorado imposes the Fee on car rental businesses rather than consumers.  It instead

supports the State defendants' position that Colorado imposes the Fee on consumers

and that car rental businesses (as well as car sharing programs) are merely obligated

to collect the Fee and forward it to the Colorado Department of Revenue.[5]

In sum, even if "fee payers" were not plainly a reference to consumers on its

own, a "context dependent term often draws its meaning from surrounding

provisions," *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 218 (2024) (citation

and quotations omitted), and those provisions here show the statute imposes the Fee

on consumers.  *See generally Gundy v. United States*, 588 U.S. 128, 141 (2019) ("It

is a fundamental canon of statutory construction that the words of a statute must be

---

[5] The dissent asserts that the "[m]ost important[]" part of its analysis is that "car rental companies have no obligation under Colorado law to pass the . . . Fee on to their customers."  Dissent at 3.  But that assumes the Fee is imposed on car rental companies.  Under the statutory framework, the Fee is imposed on "fee payers"—the consumers who rent vehicles, and the role of car rental companies and car sharing programs is only to collect and forward the Fees to the Colorado Department of Revenue.

The dissent also argues that the "cross-reference" in Colo. Rev. Stat. § 43-4-806(7.6)(b) to Colo. Rev. Stat. § 43-4-804(1)(b)(II) concerning daily vehicle rental fees "does not include § 43-4-804(1)(b)(I)(A)'s requirement that car rental invoices separately list the Fee, nor any other requirement that the Fee be passed along to end users."  Dissent at 3-4.  But this argument ignores the overall statutory scheme that plainly imposes the Fee on consumers.

13

read in their context and with a view to their place in the overall statutory scheme."

(quotations omitted)).

### 3. ACRA's Additional Arguments

ACRA's additional arguments are unavailing. They generally ignore the

Colorado statute creating the Fee.

First, ACRA refers us to "a tax return" in the record as support for its

position.[6] Aplt. Supp. Br. at 3. This Colorado Department of Revenue document is

titled "Motor Vehicle Daily Rental Return." App. Vol. II at 320. Under the heading

"General Information," the form states that "[t]he daily vehicle rental fee and

congestion impact fee are the two fees that are components of the motor vehicle daily

rental fee and are imposed on all . . . motor vehicle rentals of 30 days or less, and . . .

car sharing rentals lasting 24 hours or longer." *Id.* Under the heading

"Who Must File," the form states that "[i]f you rent motor vehicles for 30 days or

less, you must *collect and remit* the motor vehicle daily rental fee for each day a

vehicle is rented for 30 days or less." *Id.* (emphasis added). It further provides that

"a car sharing program that rents a motor vehicle for 24 hours or longer must *collect*

*and remit* the motor vehicle daily rental fee for each day the car sharing vehicle is

rented for 30 days or less." *Id.* (emphasis added). And under the heading "Payment

---

[6] The form actually addresses fees rather than taxes. As the Colorado General Assembly has made clear, "the revenue collected by the [CTE] from user fees is generated by fees, not taxes." Colo. Rev. Stat. § 43-4-806(1.5)(b).

and Submission," the form directs the person or entity completing the form to "sign and date" it and "mail it with payment to" the "Colorado Department of Revenue." *Id.* [7]

Considering the document as a whole, we conclude the form supports the State defendants' position that Colorado imposes the Fee on consumers and tasks car rental businesses and car sharing programs with collecting and remitting the Fee to the Colorado Department of Revenue.

Second, ACRA correctly points out that "there is no mechanism for the State to collect unpaid Fees from customers" and that the State must instead rely on car rental businesses and car sharing programs to collect the Fee. Aplt. Supp. Br. at 4. But as the State defendants noted at oral argument,[8] this approach is no different from state sales taxes, which businesses collect from consumers and remit to the State. *See First Agric. Nat'l Bank v. State Tax Comm'n*, 392 U.S. 339, 347 (1968)

---

[7] The dissent states this form requires car rental "companies to calculate the 'daily rental fee due'—and send along a corresponding payment—regardless of whether they collected the Fee from their customers." Dissent at 5. But the form still requires them to collect it: "If you rent motor vehicles for 30 days or less, you must *collect and remit* the motor vehicle daily rental fee for each day a vehicle is rented for 30 days or less." Aplt. App., Vol. II at 320 (emphasis added). And it explains that "the motor vehicle daily rental fee" is comprised of "[t]he daily vehicle rental fee and congestion impact fee." *Id.* Thus, consistent with the statute's language that imposes the Fee on consumers, the form plainly directs car rental companies to collect the Fee from their customers and remit it to the Colorado Department of Revenue.

[8] Oral Argument at 19:06-19:15, *Am. Car Rental Assoc. v. Humphreys*, No. 25-1246 (10th Cir. Mar. 18, 2026), ca10.uscourts.gov/sites/ca10/files/oralarguments/25-1246.mp3.

(holding that a state tax statute that directs each vendor to "add to the sales prices and [to] collect from the purchaser the full amount of the tax imposed" is a law that "imposes the legal incidence of the tax upon the purchaser").  And in any event, we are not persuaded that this fact, standing alone, is sufficient to overcome the clear and unambiguous language of Colo. Rev. Stat. § 43-4-806(7.6)(a)(I) and its related subsections, which indicate that Colorado imposes the Fee on consumers.

Third, and relatedly, ACRA highlights the word "collect" from Subsection (v)'s language forbidding states to "levy or collect a tax, fee, or charge." It argues this term supports preemption because Colorado requires the car rental companies to collect and remit the Fee.  Aplt. Br. at 12; Aplt. Supp. Br. at 5-6.  But this phrase in Subsection (v) is followed by the phrase "*upon* any business located at a commercial service airport."  49 U.S.C. § 40116(d)(2)(A)(v) (emphasis added.).  Read as a whole, the "tax or fee" must be "upon any business," irrespective of who collects it.

Fourth, ACRA also argues that the State defendants' position is "contrary to the language of Subsection (v)" and "its manifest purpose," which "is to prohibit state and local taxes and fees that discriminate against or impose undue burdens on airport commerce."  Aplt. Supp. Br. at 6.  But the language and purpose of Subsection (v) tell us nothing about who pays the Fee.  For that, we must look to the language of the Colorado statute, which clearly indicates that the Fee is imposed on consumers rather than car rental businesses.

16

Fifth, ACRA complains that "if accepted, Defendants' argument would provide an easy roadmap for circumventing" Subsection (v). *Id.* at 7. It argues that "[i]f all a state or locality need do to escape preemption is draft the law in a way that shifts the burden of taxation onto the consumer, then [Subsection (v)] would become a dead letter." *Id.* These arguments ignore Subsection (v)'s plain language, which preempts only those taxes, fees and charges that are imposed "upon any business located at a commercial service airport." 49 U.S.C. § 40116(d)(2)(A)(v). It does not preempt taxes, fees and charges imposed on consumers.

\*    \*    \*    \*

Because Colorado law clearly imposes the Fee on consumers rather than car rental businesses, we conclude that Subsection (v) does not preempt the Fee.

## III. CONCLUSION

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment.

17

No. 25-1246, *American Car Rental Association v. Humphreys, et al.*
**EID**, J., dissenting.

The American Car Rental Association ("ACRA") asserts that 49 U.S.C.

§ 40116(d)(2)(A)(v) ("Subsection (v)") preempts Colorado's Congestion Impact Fee,

a recently enacted fee of $3 per day (with annual adjustments for inflation) on all

short-term vehicle rentals in the state. Colo. Rev. Stat. § 43-4-806(7.6)(a)(I) (2026);

*see also* App'x Vol. I at 63. Subsection (v) is the latest congressional attempt to

address state and local taxation burdening interstate aviation travel, and it preempts

state and local efforts to

> levy or collect a tax, fee, or charge, first taking effect after [October 5,
> 2018], upon any business located at a commercial service airport or
> operating as a permittee of such an airport that is not generally imposed
> on sales or services by that State, political subdivision, or authority unless
> wholly utilized for airport or aeronautical purposes.

49 U.S.C. § 40116(d)(2)(A)(v).

The district court granted summary judgment to the state-official defendants,

holding that the Congestion Impact Fee falls within the carveout for taxes, fees, and

charges that are "generally imposed on sales or services" by the applicable taxing

authority. On appeal, the majority affirms this grant of summary judgment, though

on different grounds. The majority instead holds that the Congestion Impact Fee

does not fall within Subsection (v)'s preemptive scope because the Fee does not "levy

or collect a [ ] fee . . . upon any business located at a commercial service airport."

I disagree with both the district court and the majority, because the Congestion

Impact Fee is preempted by the plain language of Subsection (v). Colorado assesses

and exacts payment of the Fee from car rental companies, not consumers—a "levy" upon airport businesses. And Colorado charges the Fee exclusively on one specific service, short-term vehicle rentals—a fee "not generally imposed on sales or services." Accordingly, I respectfully dissent.

## I.

This appeal turns on the interpretation of two clauses of Subsection (v), which all agree is an express preemption provision. To determine the scope of an express preemption provision, "we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (cleaned up). Accordingly, we deploy our standard statutory interpretation toolkit, which "begin[s] and end[s] . . . with the text, giving each word its 'ordinary, contemporary, common meaning.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (quoting *Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 207 (1997)). In doing so, we do not look at a single provision "in isolation"; rather, the "text of the whole statute gives instruction as to its meaning," so we "look to the provisions of the whole law" to determine the meaning of the section at issue. *Id.* (quotations omitted).

## II.

I first analyze Subsection (v)'s threshold requirement that a state "levy or collect a tax, fee, or charge . . . upon any business located at a commercial service airport." 49 U.S.C. § 40116(d)(2)(A)(v). Based on the common meaning of the term

2

"levy" and the scheme Colorado statutorily enacted to collect the Congestion Impact Fee, the Fee falls within this requirement.

First, because the statute does not define "levy," the court must look to the term's common meaning. *See Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025). ACRA directs us to *Black's Law Dictionary*, which defines "levy" in the tax context as "to . . . assess, exact, raise, or collect." *Levy*, *Black's Law Dictionary* (6th ed. 1990). This aligns with the term's definition in other dictionaries. *E.g.*, *Levy*, *Oxford English Dictionary* (3d ed. 2015) (defining levy as "to impose (an assessment, rate, toll, etc.)" and noting this definition is often used with "upon").

With this understanding of the term "levy" in mind, the court must next determine whether Colorado "assess[es]" or "exact[s]" the Congestion Impact Fee upon airport businesses. In my view, it is at this stage that the majority goes awry. By focusing on the phrase "fee payers" in Colo. Rev. Stat. § 43-4-806(7.6)(a)(I), the majority overlooks the broader statutory framework supporting the Congestion Impact Fee—a scheme that operates upon airport businesses, not on their customers.

Most importantly, car rental companies have no obligation under Colorado law to pass the Congestion Impact Fee on to their customers. As ACRA correctly identifies, the Fee "must be collected . . . in the same manner in which the daily vehicle rental fee . . . is collected . . . pursuant to section 43-4-804(1)(b)(II)." Colo. Rev. Stat. § 43-4-806(7.6)(b). This cross-reference does not include § 43-4-804(1)(b)(I)(A)'s requirement that car rental invoices separately list the Fee, nor any other requirement that the Fee be passed along to end users. This distinguishes the

3

Congestion Impact Fee from the sales tax discussed in the Supreme Court case the majority cites, *see First Agric. Nat'l Bank v. State Tax Comm'n*, 392 U.S. 339, 347 (1968) ("It would appear to be indisputable that a sales tax *which by its terms must be passed on to the purchaser* imposes the legal incidence of the tax upon the purchaser." (emphasis added)), as well as Colorado's own sales tax regime, *see* Colo. Rev. Stat. § 39-26-106(2)(a) ("[R]etailers shall add the [sales] tax imposed . . . to the sale price or charge, showing such tax as a separate and distinct item."); *id.* § 39-26-108 ("It is unlawful for any retailer to advertise or hold out or state to the public or to any customer, directly or indirectly, that [the sales tax] will be assumed or absorbed by the retailer or that it will not be added to the selling price of the property sold or if added that it or any part thereof will be refunded.").

Without any obligation to pass the Congestion Impact Fee on to their customers, car rental companies cannot fairly be described as "merely . . . collect[ing] the Fee and forward[ing] it to the Colorado Department of Revenue." Maj. Op. at 12.[1]  Colorado's statutory scheme instead assesses and exacts the Fee directly and exclusively upon car rental companies.  Take Colorado's applicable tax form, Department of Revenue Form DR 1777, for example.  *See* App'x Vol. II at 320–22; *see also* Colo. Rev. Stat. §§ 43-4-804(1)(b)(II), 43-4-806(7.6)(b) (requiring car rental companies to use "forms furnished by the department of revenue" when complying

---

[1] The same goes for car sharing programs, which also have no legal obligation to pass the Congestion Impact Fee on to their customers and are required to pay the Fee to the state Department of Revenue.  *See* App'x Vol. II at 320.  *Contra* Maj. Op. at 12.

with their Congestion Impact Fee obligations). Form DR 1777 requires companies that rent vehicles on a short-term basis to file a return every month. And crucially, the Form requires these companies to calculate the "daily rental fee due"—and send along a corresponding payment—regardless of whether they collected the Fee from their customers. *See* App'x Vol. II at 322 (calculating the minimum amount due from car rental companies without reference to the amount collected).[2]

In sum, car rental companies are not required to pass the Congestion Impact Fee onto their customers, and Colorado assesses and exacts the Fee on car rental companies without regard to their collections. Accordingly, Colorado's statutory scheme operates to "levy" a "fee . . . upon [ ] business located at a commercial service airport."

## III.

Since the Congestion Impact Fee falls within Subsection (v)'s general ambit, the court must also determine whether the Fee nevertheless escapes preemption by falling within the statutory carveout for taxes and fees "generally imposed on sales or services." 49 U.S.C. § 40116(d)(2)(A)(v). In my view, it does not.

ACRA ascribes "generally" the meaning of "widely, extensively" and then argues that a fee that applies exclusively to one service cannot be deemed "generally imposed *on*

---

[2] The majority notes language in the "General Information" section of Form DR 1777 instructing car rental companies to "collect" the Congestion Impact Fee. *See* Maj. Op. at 14 n.7; App'x Vol. II at 320. But the majority fails to address the body of Form DR 1777—which, "under penalty of perjury," App'x Vol. II at 322, requires car rental companies to calculate the amount due (an assessment) and make payment (an exaction) regardless of whether they collected the Fee from their customers.

*sales or services.*"  Aplt. Br. at 9, 31 (quotation marks omitted) (quoting *Generally*, *Oxford English Dictionary* (3d ed. 2015)).  In its view, the modifying language in this carveout (i.e., "on sales or services") makes clear that for a tax or fee to qualify for the carveout from preemption it must be "generally imposed" across the universe of goods and services as a whole.

The state officials advance a different interpretation of Subsection (v)'s carveout. They believe "generally" means something done in a manner that involves or belongs "to every member of a class, kind, or group."  Aple. Br. at 19 (citing *Generally*, *Webster's Third New International Dictionary* (2002)).  In their view, since the Fee applies to all short-term vehicle rentals made in the state, the Fee applies to "every member of a class" and is, therefore, generally imposed.

I find ACRA's interpretation more persuasive.  In particular, even if one were to adopt the state officials' definition of "generally," their argument overlooks the fact that the statute already specified the relevant "class, kind, or group" that the tax, fee, or charge must cover:  "sales and services."  As a result, the Congestion Impact Fee—which is only imposed on one type of service—cannot satisfy the state officials' own test of generality.

The state officials offer two primary counterarguments,[3] but neither persuades. First, the state officials argue that ACRA's interpretation would read "fee" out of the

---

[3] The state officials also offer a bevy of dire "policy implications" that ACRA's reading of Subsection (v) would generate—most notably, that their interpretation would prohibit "any new targeted tax or fee without exempting airports or using the revenue collected from airport businesses exclusively at the airport."  Aple. Br. at 35, 37; *see also id.* at 35–44.  But "policy concerns cannot trump the best interpretation of the statutory

statute as, by definition, there is no such thing as a generally imposed fee. But the "generally imposed" exemption from preemption is not logically required to encompass fees (or charges for that matter). A perfectly sensible statute could preempt the entire universe of "tax[es], fee[s], and charge[s]" while only exempting from this preemption generally imposed taxes. Put differently, the "tax, fee, or charge" language ensures that Subsection (v) covers the waterfront of potential state and local financial impositions, but this broad language does not demand a similarly expansive "generally imposed" exemption.

Second, the state officials' interpretation is not mandated by the preambulatory language preceding Subsection (v). In the lead up to its enumeration of prohibited taxing practices, the statute provides that "[a] State, political subdivision of a State, or authority acting for a State or political subdivision may not do any of the following acts because those acts unreasonably burden and discriminate against interstate commerce." 49 U.S.C. § 40116(d)(2)(A). But it would be an overreading of Congress's invocation of its Commerce Clause authority to narrow Subsection (v)'s application to only laws that treat on- and off-airport transactions differently. After all, a state can just as easily "unreasonably *burden* and discriminate against interstate commerce" via taxes that target goods and services predominately used at airports (such as car rental services).

All in all, Subsection (v)'s carveout for taxes "generally imposed on sales or services" is best read to encompass taxes that apply widely across the entire universe

---

text," *Patel v. Garland*, 596 U.S. 328, 346 (2022); therefore, I do not discuss these arguments further.

7

of "sales and services."  And because the Congestion Impact Fee only applies to one service, short-term car rentals, it does not qualify for this exemption from preemption.

## IV.

Colorado's Congestion Impact Fee is "lev[ied]" on airport businesses and is "not generally imposed on sales or services."  49 U.S.C. § 40116(d)(2)(A)(v). Accordingly, the Fee is preempted by Subsection (v).  I therefore respectfully dissent.

8